**Bruce FERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–96–00185–CR.**

Court of Appeals of Texas,
San Antonio.

Jan. 21, 1998.

Rehearing Overruled Feb. 18, 1998.

**782**

Suzanne M. Kramer, John J. Fahle, Law Offices of John J. Fahle, San Antonio, for Appellant.

Matthew W. Paul, State's Prosecuting Attorney, Jeffrey L. Van Horn, First Assistant State's Attorney, Austin, Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, JOHN F. ONION, Jr., Justice[1].

## OPINION

JOHN F. ONION, Jr., Justice (Assigned).

This appeal stems from convictions on two counts of aggravated robbery alleged in a single indictment. After the jury found appellant Bruce Fernandez guilty, punishment was assessed at 20 years' imprisonment on each count. The sentences were ordered to run concurrently.

■ Appellant advances eight points of error. Initially, appellant contends that the trial court erred in denying his motion for an instructed verdict of not guilty because the State failed to corroborate the testimony of the accomplice witness as required by law. *See* TEX.CODE CRIM.PROC. 38.14 (Vernon 1979). Such contentions are now considered as challenges to the sufficiency of the evidence to sustain the conviction. *See Cook v. State,* 858 S.W.2d 467, 469–70 (Tex.Crim.App. 1993).

Under the appellate record before this court, we conclude that the first point of error must be sustained. We need not enumerate the other points of error.

### Facts

Rudy Ybarra was the State's first witness. He had pleaded guilty to robbery, and the trial court was to later instruct the jury that Ybarra was an accomplice witness as a matter of law.

Ybarra and appellant were together on the afternoon of October 20, 1994. About 9:30 p.m., Jerry Lopez and Carlos Garibay came by appellant's house and the foursome left in Lopez's blue Dodge Dynasty automobile and drove out on U.S. 281. According to Ybarra, appellant and Garibay began talking about "jacking" or robbing someone. The group began to follow a pickup truck whose tire rims attracted their attention. Garibay handed a gun to appellant. The truck was followed into a neighborhood near Marbach

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

Street. The individuals in the truck got inside their house before appellant and his companions arrived.

The group then drove down Broadway into Alamo Heights where two Cadillac automobiles were spotted driving ahead of the Dodge. Appellant stated that he wanted to rob the owners of one of the Cadillacs. Lopez followed one of the Cadillacs up the Austin Highway and then onto Sheraton Street where the Cadillac turned into a driveway. Ybarra revealed that appellant got out of the Dodge and sneaked up to the Cadillac and waited for the occupants to get out. Appellant was wearing dark clothing and had a cap on his head and a bandana around his face. Ybarra saw appellant pointing the gun at a man and a woman as they were exiting their vehicle.

Ybarra explained that he and the others decided to leave appellant when they saw a police car pull onto Sheraton Street. When they stopped at a stop sign, appellant jumped into the car with the gun and a purse. As he did, the gun discharged, and Lopez was hit in the neck. Appellant jumped out of the Dodge and said "Y'all don't know me." At this time, the gun in appellant's hand discharged again, and appellant ran off.

After appellant fled, the wounded Lopez managed to pull onto the Austin Highway, and Garibay grabbed the wheel of the Dodge and brought it to a stop. A nearby San Antonio Police officer was flagged down and assistance was requested for Lopez who was bleeding from the neck and coughing up blood. EMS arrived to care for Lopez. By this time, the Terrell Hills Police arrived and informed the other officers that the three men had been involved in a robbery. Ybarra and Garibay were then arrested. Lopez did not survive.

Diana Morehouse testified that on the night of October 20, 1994, she and her husband were returning home from a charity event in their 1993 Cadillac. As they pulled into the garage at their home and exited their car, a man, waving a gun, ran into the driveway and yelled: "Give me your money, you m—— f——." She gave the assailant her purse which was later recovered from Lopez's car.

Mrs. Morehouse was unable to see the assailant's face as he was wearing a dark knitted cap and something around his face. She noticed that he had a slender build, was about five feet, seven or eight inches tall and had olive colored skin. The man ran and the witness then heard what she thought were shots. She did not see the car as she was terrified and trying to get into her home. Mrs. Morehouse did not know appellant and could not identify him as the robber though appellant was approximately the same size and build.

Jeffrey Morehouse basically reiterated the events revealed by his wife. He described the armed robber as being masked and being a little taller than he was. The man seemed to have a Hispanic accent. Morehouse gave the robber a gold money clip with three or four hundred dollars and saw his wife give the man her purse. He described the getaway car as being a blue or gray four door vehicle. Morehouse also described how the robber got in the back passenger seat of the vehicle containing three other people but he couldn't estimate their size. Morehouse heard two shots fired. He immediately went inside his home and called 911. Morehouse was taken by the police to the location where the Dodge had come to a stop. Morehouse was unable to identify Lopez, Ybarra, or Garibay as the robber. Morehouse and Officer Bennett then searched the area near Sheraton Morningside, and Austin Highway where Morehouse heard shots being fired. They found a nine millimeter semi-automatic handgun.

At trial, Morehouse testified that he did not know appellant and could not identify him as the robber. When asked if appellant was the same size and build, he answered: "I would say he's along the same. I would assume he's a few inches taller than I am and about the right build. But as to whether— that's about all I could say."

Terrell Hills Police Sergeant Andres De-Leon testified that about 11:40 p.m. on the night in question he was in a parking lot on Austin Highway sitting in his police vehicle when he saw a Cadillac being followed by a blue four door Dodge with its headlights off.

In a few minutes he followed the cars. As he approached Sheraton and Morningside, he saw a slim built young man about five feet, seven or eight inches tall, running from the Morehouse house. While searching for this individual he received a dispatch about the robbery and went to the Morehouse house. On his way he saw the blue Dodge . but continued to the house as directed. While talking to Morehouse, DeLeon received a dispatch about the Dodge being stopped on Austin Highway. DeLeon went to that location and saw the three suspects. He described Garibay as being five feet, ten or eleven inches tall, stout, weighing between 200 and 220 pounds with collar-length hair. Ybarra was described as weighing between 280 and 300 pounds. Lopez was described as being five feet, ten or eleven inches tall and weighing 180 to 190 pounds. Sergeant De-Leon identified a bandana as having been recovered from the back pocket of Garibay's pants.

Terrell Hills Police Detective Donald Davis recovered a 9 millimeter shell case from the Dodge and took charge of the handgun found by Officer Bennett and Morehouse. He revealed that the weapon was jammed when found. No attempt was made to lift fingerprints from the weapon.

Richard Stengel, a firearms examiner, testified that the bullet recovered from Lopez's body, and the spent shell casing found in the car, were fired from the gun that was recovered.

Detective Davis took a written statement from appellant which was introduced before the jury. In the statement, appellant admitted that he and Ybarra were walking to Ybarra's home about 8:00 p.m. on October 20, 1997, when they were picked up by Lopez and Garibay driving a blue Dodge. They went to a convenience store because Ybarra was hungry. On the way, Garibay gave appellant a 9 millimeter pistol and said he wanted to sell it. After examining the weapon, appellant returned it to Garibay as he did not know anyone interested in purchasing a gun. After leaving the convenience store, appellant claimed he was taken home, that he talked to his sister, and then went to bed.

He did not awaken until 10 or 11 o'clock the next morning.

### Sufficiency of the Corroboration

Appellant, in his first point of error, contends that the evidence is insufficient to corroborate the testimony of the accomplice witness as required by article 38.14 and that his convictions cannot stand.

 The standard for reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villalon v. State*, 791 S.W.2d 130, 132 (Tex. Crim.App.1990); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex.App.—Austin 1994, pet. ref'd). The standard of review is the same in both direct and circumstantial evidence cases. *Herndon v. State*, 787 S.W.2d 408, 409 (Tex.Crim.App.1990). In our review of the legal sufficiency of the evidence, we must consider all the evidence that the jury was permitted, properly or improperly, to consider. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993), *cert. denied*, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994). Moreover, the sufficiency of the evidence should be measured by the elements of the offense as defined by the "hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

Appellant, however, claims the evidence never measured up to the requirement of article 38.14 which provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979).

 It is clear from the statute that the testimony of an accomplice witness alone cannot furnish the basis for a conviction and

a conviction so based must be reversed. *Paulus v. State*, 633 S.W.2d 827, 843 (Tex. Crim.App.1981). And this is true no matter how complete a case against the defendant may have been made by the accomplice witness's testimony, and no matter how much credit the jury might have given to such testimony. *Id.; Walker v. State*, 615 S.W.2d 728, 731 (Tex.Crim.App.1981).

An accomplice witness has been described as a discredited witness. *See Munoz v. State*, 853 S.W.2d 558, 559 (Tex.Crim.App. 1993). It has been said that the testimony of an accomplice witness must be viewed with caution and carefully scrutinized not only because of any interest such witness might have, but because his or her testimony is evidence from a corrupt source. *Paulus*, 633 S.W.2d at 843.

▮ The purpose of the accomplice witness rule is to ensure that the jury does not consider accomplice witness evidence unless the jury finds both that the accomplice witness is telling the truth and that other evidence corroborates the accomplice witness. *See Tran v. State*, 870 S.W.2d 654, 658 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). The accomplice witness rule is a legislative creation, not required by common law or as a matter of federal constitutional law. *Thompson v. State*, 691 S.W.2d 627, 631 (Tex.Crim. App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

In *Edwards v. State*, 427 S.W.2d 629, 632 (Tex.Crim.App.1968), the court wrote:

> The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise it is not.

*See also Burks v. State*, 876 S.W.2d 877, 887 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *Munoz*, 853 S.W.2d at 559; *Reed v. State*, 744 S.W.2d 112, 125 (Tex.Crim.App.1988);

*McDuff v. State*, 943 S.W.2d 517, 521 (Tex. App.—Austin 1997, pet. ref'd).

▮ In applying the test of the sufficiency of the corroboration each case must be considered on its own facts and circumstances, *Reed*, 744 S.W.2d at 126, and all facts may be looked to as furnishing the corroboration. *Washburn v. State*, 167 Tex. Crim. 125, 318 S.W.2d 627, 634 (1958), *cert. denied*, 359 U.S. 965, 79 S.Ct. 876, 3 L.Ed.2d 834 (1959). The corroborative evidence may be circumstantial or direct. *Gosch v. State*, 829 S.W.2d 775, 777 (Tex.Crim.App.1991), *cert. denied*, 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); *Paulus*, 633 S.W.2d at 843. Corroborative evidence need not establish the defendant's guilt of the charged offense nor directly link the accused to the offense, but is sufficient if it "tends" to connect the defendant to the offense. *Cox v. State*, 830 S.W.2d 609, 611 (Tex.Crim.App. 1992); *Granger v. State*, 683 S.W.2d 387, 392 (Tex.Crim.App.1984), *cert. denied*, 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985). Insignificant circumstances sometimes afford most satisfactory evidence of guilt and corroboration of the accomplice witness testimony. *Reed*, 744 S.W.2d at 126.

▮ When, however, the non-accomplice witness' evidence does no more than point the finger of suspicion towards an accused it is insufficient to corroborate as required by article 38.14. *Paulus*, 633 S.W.2d at 844. Although an accomplice witness may state any number of facts that are corroborated by evidence of non-accomplice witnesses, still if the facts thus corroborated do not tend to connect the accused with the crime, corroboration on that basis would not meet the requirements of article 38.14. *Id.* If the non-accomplice witness evidence fails to connect the accused to the offense, the evidence is insufficient to support the conviction. *Munoz*, 853 S.W.2d at 560.

▮ Ybarra, the accomplice witness as a matter of law, made out a complete case against appellant. Without the requirements of article. 36.14, there would be no question as to the sufficiency of the evidence to support the convictions. Applying the legislatively created accomplice witness rule as we are required to do, and the test of sufficiency

of corroboration as discussed in *Edwards*, we must look to the non-accomplice witnesses' testimony. The critical question is whether that evidence tends to connect appellant to the commission of the crimes charged.

■ The State introduced appellant's extrajudicial statement. Such a statement, if it tends to connect the accused to the commission of the offense, may in a proper case itself corroborate the accomplice witness's testimony. *See DeBlanc v. State*, 799 S.W.2d 701, 718 (Tex.Crim.App.1990). Appellant's statement only admitted that he had been with the other three suspects earlier in the evening, and had examined and returned a gun to Garibay. The statement alone does not tend to connect appellant with the offenses. The Morehouses were unable to identify the robber nor was Officer DeLeon able to identify the individual seen running from the Morehouse residence. They gave a vague description as to possible height and body size. Only DeLeon described the individual as a young man. While there was evidence that appellant fit the general description, so would hundreds or thousands of other men in the area. No fingerprints were lifted from the weapon found and no other non-accomplice evidence placed appellant at the scene or in the company of the other three suspects at the time. Of course, a number of the facts stated by Ybarra were corroborated, still these corroborated facts do not tend to connect appellant with the crimes, and corroboration on that basis does not meet the requirements of article 36.14.

### Conclusion

We conclude that the accomplice witness's testimony has not been corroborated as required by law. The first point of error is sustained. We, therefore, do not reach the other points of error.

The judgments of conviction are reversed and appellant is ordered acquitted of each. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).