Reversed and Remanded; Opinion filed August 18, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00399-CR

___________________

 

JARRELL Freeman, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 339th District Court

Harris County,
Texas



Trial Court Cause No. 1143833

 



 

 

OPINION

            Appellant
Jarrell Freeman argues that his conviction for aggravated robbery must be
reversed because he was egregiously harmed by the trial court’s failure to
instruct the jury sua sponte that it could not convict appellant based
solely on the testimony of accomplices.  Because we agree that rational jurors
would have found the State’s case significantly less persuasive if they had
been properly instructed, we agree.  We accordingly reverse and remand the case
for a new trial.    

I.  Factual and Procedural Background

            Between
10:30 and 11:00 p.m. on November 29, 2007, Rebecca Arredondo noticed that a gold
or brown four-door car had backed into the driveway of her duplex on Fresa in
Pasadena.  As she watched, three male passengers exited the vehicle.  Arredondo
could not describe the men, but she thought that they wore long pants and long-sleeved
shirts.  The man nearest to her wore a blue or black bandana over his face and hid
something under his arm.  When the men began walking toward the convenience
store on the corner of Fresa and Lafferty, Arredondo feared that they were
going to rob it, and she immediately telephoned 911.  Arredondo was still on
the phone several minutes later when she heard and saw the car slowly pull out
of the driveway.  She reported this to the 911 dispatcher.

            Officer Joseph Gonzales of the Pasadena
Police Department was driving on Fresa when he heard the call about a
suspicious four-door, gold-colored vehicle.  As he approached the convenience
store, he saw three people crouched outside.  He pulled into the parking lot as
the three people ran toward the front of the store.  Believing there was a
possible robbery in progress, he called for assistance.  

            Store owner Abdul Seth and employee Eugene
Manger were working at the convenience store that night when three black men
with dark cloths over their faces entered.  Seth could state only that the cloths
were a dark color, but Manger stated that they were blue.  Both Seth and Manger
testified that one man wore jeans and a black long-sleeved t-shirt and another
man wore a red long-sleeved t-shirt.  Seth did not know what the third man
wore, but Manger testified that he wore black clothing as well.  Seth testified
that he believed from the robbers’ voices that they were black.  The police did
not ask Seth for physical descriptions of the men, but at trial he estimated
that the perpetrators were 5'6" or 5'7", and one of them looked heavy. 
While one of the men held the door and yelled at the others to hurry, another
man pointed a gun at Manger and ordered him to lie on the ground.  The third
man pointed a gun at Seth and ordered him to open the cash register.  The man stole
cash from the register and grabbed cigars and cigarettes from behind the
counter.  All three men then ran out of the store, past Gonzales’s patrol car,
and down Fresa.  According to Gonzales, one of the men was wearing dark pants
and a dark long-sleeved shirt, and another was wearing dark pants and a dark
hoodie.  The third man wore long pants and a red shirt.  All three suspects had
their faces covered.  Gonzales pursued them in his patrol car until the three
people entered a wooded area.  Shortly thereafter, he joined other officers who
had detained Alegra Coleman, the driver of the gold, four-door vehicle. 
Coleman lived in the apartment complex on the other side of the wooded area
where the three suspects who fled on foot disappeared from view. 

            Meanwhile, police continued their efforts
to track the remaining suspects.  The wooded area was muddy, and tracking dogs
were unable to trace the suspects, but officers found and collected evidence
that marked the suspects’ path.  They found a piece of black cloth and a
baseball cap in the parking lot of the convenience store.  A trail of cigars
and cigarettes was found along the suspects’ route down Fresa to the wooded
area.  Someone had cut the bottom of the fence that separated the wooded area
from the apartment complex where Coleman lived, and there were signs that
someone had slid through the mud below the cut in the fence.  Near the fence, officers
found a second piece of black cloth “tied in the shape of a bandana.”

            A little after 2:00 a.m., patrol officers
went to Coleman’s apartment.  Through a window, they saw three black males in the
living room.  Appellant was sleeping on the couch, while another man slept in a
recliner and the third man lay on the floor.  The men with appellant were later
identified as appellant’s brother Jonathan Freeman and Coleman’s live-in boyfriend
Nickalus Roberts.  Police knocked and announced themselves, and appellant
answered the door.  He was wearing a white shirt and dark blue pants or
shorts.  When he opened the door, police saw a pair of shoes with fresh mud on
them near the dining-room table, and a black hoodie was on the floor nearby.  Police
handcuffed all three men and allowed them to sit on the couch while awaiting
detectives.  

            After the three suspects were arrested
and transported from the apartment, police sought and obtained Coleman’s consent
to search the apartment.  They transported her back to her apartment, and she
remained in the living room during the search.  In the apartment, officers
found overalls and two pairs of pants with fresh mud on them.  Behind a panel
used to access plumbing, police also found some damp, dirty shirts with grass
on them and a 38-caliber gun with mud embedded in the backstrap.  On the couch
in the living room, police found “some pieces of cloth, possibly of a shirt.”  Jonathan
Freeman’s wallet containing fifty dollars was on the back of the couch.  In a
closet, police found a $100 bill and a bill of sale for Roberts’s purchase of a
car a year earlier.

            Coleman, Roberts, and the Freeman
brothers were indicted for aggravated robbery, and Coleman and Roberts pleaded
guilty.[1] 
At appellant’s trial, Coleman and Roberts testified that they and the Freeman
brothers participated in the robbery; Roberts additionally explained that the
masks were made from a black t-shirt.  Appellant did not ask the trial court to
instruct the jury on the law concerning accomplice-witness testimony, and did not
object to the trial court’s failure to give such instructions sua sponte.  The jury
found appellant guilty as charged, and after considering enhancements, the
trial court sentenced appellant to twenty years’ confinement in the Texas
Department of Criminal Justice–Institutional Division. 

            In the sole issue presented for review,
appellant asks us to reverse his conviction because the trial court failed to
inform the jury that a criminal defendant cannot be convicted under Texas law
based on the uncorroborated testimony of an accomplice.  

II.  Analysis

A.        The trial court erred in failing to
instruct the jury on the accomplice-witness rule.

            The trial court is required to instruct
the jury on the law applicable to the case.  Tex.
Code Crim. Proc. Ann. art. 36.14 (West 2007).  And, by statute, a person
cannot be convicted of an offense based solely on the testimony of an
accomplice.  Id. art.
38.14.  An accomplice is any person who, with the requisite culpable mental
state, participated with the accused before, during, or after the crime by
performing some affirmative act that promoted its commission.  Druery v.
State, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).  Because an accomplice
is, by definition, involved in the very crime being prosecuted, the Texas legislature
recognized that accomplices seeking to reduce or eliminate their own punishment
may attempt to shift blame or curry favor from prosecutors by testifying, even
falsely, against others.  Nolley v. State, 5 S.W.3d 850, 852–53 (Tex.
App.—Houston [14th Dist.] 1999, no pet.).  The legislature therefore provided
that, for the conviction to stand, accomplice testimony must be corroborated by
non-accomplice evidence that tends to connect the defendant to the offense.  Tex. Code Crim. Proc. Ann. art. 36.14. 


            A person who has been indicted for the
same or a lesser-included offense is an accomplice as a matter of law.  Smith
v. State, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011).  Because Coleman and
Roberts were indicted for aggravated robbery as a result of their involvement
in the same offense for which appellant was tried, they are his accomplices as
a matter of law.  See id.  The
trial court therefore was required to inform the jury of the accomplice-witness
rule, and its failure to do so was error.  See Herron v. State, 86
S.W.3d 621, 631 (Tex. Crim. App. 2002).  

            Citing Bennett v. State, the State
argues that by failing to request an instruction on the accomplice-witness
rule, appellant waived any complaint about its omission.  See Bennett v.
State, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) (holding that trial court
did not err in failing to submit unrequested instructions on defense of a third
person and defense of property).  We disagree.  As the Court of Criminal
Appeals has explained, defendants have no right to unrequested instructions on “defensive
issues,” which depend “on the defendant’s theory of the case and the evidence
presented.”  Huizar v. State, 12 S.W.3d 479, 484 n.7 (Tex. Crim. App.
2000) (op. on reh’g) (citing Posey v. State, 966 S.W.2d 57, 62 (Tex.
Crim. App. 1998)).  But an instruction on the accomplice-witness rule does not
depend on the defendant’s theory of the case.  Oursbourn v. State, 259
S.W.3d 159, 180 (Tex. Crim. App. 2008).  It is implicitly required by statute
any time an accomplice-witness issue is raised by the evidence.  Id.  

            When an instruction is mandated by
statute and the defendant neither requests its inclusion in the charge nor objects
to its omission, the trial court’s error in failing to give the required
instruction is not waived, but a higher level of harm is required for reversal. 
Id. at 165 (citing Almanza v. State, 686 S.W.2d 157 (Tex. Crim.
App. 1985) (op. on reh’g), superseded on other grounds by rule as stated in
Rodriguez v. State, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988)).  If a
criminal defendant timely objects to an erroneous charge, then we will reverse
if the error was calculated to injure his rights, or stated differently, if the
error caused the defendant “some harm.”  Almanza, 686 S.W.2d at 171. 
But if the defendant failed to object, we will reverse only if the error has caused
egregious harm such that it affects the very basis of the case, deprives the
defendant of a valuable right, or vitally affects a defensive theory.  Olivas
v. State, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).  In effect, egregious
harm deprives a defendant of a fair and impartial trial.  Neal v. State,
256 S.W.3d 264, 278 (Tex. Crim. App. 2008).  We therefore apply this stricter
standard of review in analyzing the harm to appellant from the trial court’s
error.

B.        The trial court’s error egregiously harmed
appellant.

            A defendant is egregiously harmed by the
trial court’s omission of an accomplice-witness instruction if a rational jury
“would have found the corroborating evidence so unconvincing in fact as to
render the State’s overall case for conviction clearly and significantly less
persuasive.”  Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App.
1991).  We consider the extent of any harm “in light of the entire jury charge,
the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole.”  Id. at 690 (quoting Almanza,
686 S.W.2d at 171).  

            To measure the sufficiency of the
corroborating evidence, we eliminate all of the accomplice evidence from the
record and determine if the remaining inculpatory evidence tends to connect the
appellant to the offense.  Malone v. State, 253 S.W.3d 253, 257 (Tex.
Crim. App. 2008).  Such evidence may be direct or circumstantial.  Munoz v.
State, 853 S.W.2d 558, 569 (Tex. Crim. App. 1993).  In evaluating the
non-accomplice evidence, we consider its reliability and the strength of its
tendency to connect the defendant to the crime.  Herron, 86 S.W.3d at
632.  Corroborating evidence is reliable if “there is no rational and
articulable basis for disregarding it or finding that it fails to connect the
defendant to the offense.”  Id. at 633.  We evaluate the sufficiency of
non-accomplice evidence in light of the particular facts and circumstances of
each case.  Smith, 332 S.W.3d at 442.  The corroborating evidence
required when we are reviewing for egregious harm need not be as strong as
would be required if we were reviewing only for “some harm.”  Herron, 86
S.W.3d at 633.  

            After considering the entire record and
deferring to the jury’s view of the facts, see Smith, 332 S.W.3d at 442,
we agree with appellant that the non-accomplice evidence is so weak that he was
egregiously harmed by the trial court’s failure to instruct the jury on the
corroboration requirement.  Aside from the accomplice testimony, the only
evidence that tends to connect appellant to the offense is the fact that,
several hours after the offense and in the company of two of the other
accomplices, appellant was one of three black men asleep at Coleman and Roberts’s
apartment, where police found physical evidence that could be connected circumstantially
to the robbery.  None of the physical evidence, however, is linked to
appellant.  

            On a couch in the living room, police
found “some pieces of cloth, possibly of a shirt.”  These were found in the
common area of the apartment belonging to the two accomplices who confessed to
the robbery.  See Biera v. State, 280 S.W.3d 388, 396 (Tex.
App.—Amarillo 2008, pet. ref’d) (reversing conviction where the only
non-accomplice evidence were masks found in an apartment that the confessed
robber also occupied).  Although Jonathan’s wallet was found on the back of the
couch, no property identified with appellant was found on the couch or anywhere
else in the apartment.  There was no non-accomplice evidence that the muddy
clothes, shoes, and gun found in the apartment belonged to or were ever used by
appellant, who was a guest, rather than to Roberts, who resided there.  

            The State correctly points out that, if
accompanied by other suspicious circumstances, evidence that the accused was at
or near the crime scene around the time of the offense may tend to connect the
accused to the crime.  Romero v. State, 716 S.W.2d 519, 522 (Tex. Crim.
App. 1986).  According to the State, appellant’s presence at Coleman and
Robert’s apartment several hours after the robbery is a suspicious circumstance
because (1) it is near the scene of the crime, (2) an accomplice rented it, and
(3) “it appeared to have been forcibly entered and was possibly the scene of a
criminal trespass or burglary of a habitation.”  We disagree.

            Although the apartment complex where Coleman
and Roberts lived was less than a half-mile from the convenience store where the
robbery occurred, the complaint shows that appellant lived in the same
apartment complex.  Compare Walker v. State, 615 S.W.2d 728, 733 (Tex.
Crim. App. 1981) (testimony that defendant and accomplice were together at a
gas station at or after midnight and approximately three hours before the crime
“must be considered in light of the fact that both the appellant and [the
accomplice] lived in the . . . vicinity”) with Burks v.
State, 876 S.W.2d 877, 888 & n.12 (Tex. Crim. App. 1994) (pointing out
that appellant, who lived near the crime scene, was not merely nearby, but also
was seen an hour earlier in a vehicle similar or identical to one observed at
the crime scene and was looking for bullets of the same caliber extracted from
the deceased).  Thus, appellant’s proximity to the crime scene does not tend to
connect him to the robbery.

            We also cannot agree that appellant’s
presence at the accomplices’ apartment is a suspicious circumstance tending to
connect appellant to the offense.  The “mere presence of the accused in company
with the accomplice witness shortly before or after the time of the offense is
not, in itself, sufficient corroboration.”  Harris v. State, 738 S.W.2d
207, 218 (Tex. Crim. App. 1986).  The State does not explain why a different rule
should apply when the accused was in the accomplices’ presence at an
accomplice’s home, rather than, for example, in the accomplice’s vehicle, at
the home of an accomplice’s relative, or at the defendant’s own home.  Cf.
Thomas v. State, 166 Tex. Crim. 331, 333–34, 313 S.W.2d 311, 312–13
(1958) (reversing conviction because corroborating evidence showed only that appellant
left a bar with accomplice in accomplice’s truck while deceased followed); Gaston
v. State, 324 S.W.3d 905 (Tex. App.—Houston [14th Dist.] 2010, pet. ref’d)
(reversing conviction where corroborating evidence showed only that appellant
was with accomplice at home of accomplice’s sister, borrowed the sister’s car,
and returned with a large number of five-dollar bills); Etheredge v. State,
542 S.W.2d 148, 150 (Tex. Crim. App. 1976) (reversing conviction for unlawful
delivery of drugs because corroborating evidence showed only that buyer went
into appellant’s house with money, came out with drugs, and was followed
outside by appellant, who stood on the porch speaking with the buyer).  

            The State also argues that Coleman’s
apartment was a “suspicious place”—and hence, appellant’s presence there was a
suspicious circumstance—because when police arrived, they observed that the living-room
window was partially open and the blinds were crushed.  Such evidence does not
tend to connect appellant, even indirectly, to the robbery.  At trial, Coleman
testified that she had lost Roberts’s key to the apartment, and Roberts
testified that after the robbery, he and the Freeman brothers entered the
apartment through the window.  But, evidence that merely corroborates what the
accomplice said the participants did, but which does not tend to connect the
accused to the offense, is not sufficient.  See Walker, 615 S.W.2d at
732 (stating that such evidence cannot be considered).[2]  Corroborating
evidence need not provide a direct link to the crime, but it must tend to
connect the defendant in some way to the charged offense.  Id.

            The evidence tending to link appellant to
the offense appears to consist almost entirely of the fact that he was one of
three black men at Coleman’s apartment several hours after the robbery.  The
prosecutor stated in closing argument that police officers who went to
Coleman’s apartment found “[t]hree black males, same build, same height as the
three males Joe Gonzales saw run out of the store.”  The record does not show
that Gonzales or anyone else described for police how the three perpetrators
were built.  Seth specifically denied that police ever asked for such a
description, but testified that he believed they were black based on the sound
of their voices.  Gonzales described the suspects’ clothing and a gun, but he
did not describe the suspects’ race, height, weight, or body type.  Arredondo
testified that three men exited the gold car, but like Gonzales, she did not
describe their race, height, weight, or anything about the physique of any
suspect.  And although witnesses described the clothing that the offenders were
wearing, appellant’s clothing did not match the description.  Evidence that the
accused was in the accomplice’s presence around the time of the offense is not
sufficient corroboration, and that rule is no less true when the accused is of
the same race as the offender.  See Gaston, 324 S.W.3d at 911 (rejecting
argument that accomplice testimony was corroborated because the jury could
compare the appellant’s physique to the masked person in a surveillance video where
the person on the video was completely covered but for a portion of his neck
that was exposed, revealing his skin color); see also Fernandez v. State,
989 S.W.2d 781, 783, 786 (Tex. App.—San Antonio 1998, pet. ref’d) (testimony
about offender’s height, build, skin color, and accent did not corroborate
accomplice testimony where the description could match “hundreds
or thousands of other men in the
area”).  

            Citing a number of cases from the Court
of Criminal Appeals, the State maintains that the evidence of suspicious
circumstances in this case, when added to appellant’s association with the
accomplices, tend to connect him to the crime.  See, e.g., McDuff v.
State, 939 S.W.2d 607, 611–12 (Tex. Crim. App. 1997); Dowthitt v. State,
931 S.W.2d 244, 249–50 (Tex. Crim. App. 1996); Reed. v. State, 744
S.W.2d 112, 126–28 (Tex. Crim. App. 1988); Cockrum v. State, 758 S.W.2d
577, 581–82 (Tex. Crim. App. 1988); Harris v. State , 738 S.W.2d 207, 218–19
(Tex. Crim. App. 1986); Edwards v. State, 427 S.W.2d 629, 633 (Tex.
Crim. App. 1968).  These cases, however, are not analogous to the one before
us.

            The evidence in this case is far weaker
than that of McDuff v. State.  In that case, witnesses saw a vehicle
being driven the wrong way down a one-way street, heard a woman’s scream from a
car wash, and within minutes, saw the accused leave the car wash by driving a
vehicle the wrong way on a one-way street.  McDuff, 939 S.W.2d at 611. 
Other witnesses testified that the defendant was seen pushing his vehicle to a
motel parking lot where it was abandoned.  Id.  Investigators found
human blood inside the vehicle, as well as five hairs that microscopically
matched the murder victim’s hair.  Id.  Finally, the defendant was
arrested in another state where, using an alias, he worked and had checked into
a shelter for the homeless.  Id. at 612.  

            As in McDuff, there was a
wealth of evidence in Dowthitt v. State that tended to connect the
criminal defendant to the offense.  See Dowthitt, 931 S.W.2d at 249–50. 
Among other things, the defendant admitted his presence at the crime scene
during the murder; he had blood on his shirt; his fingerprints and the victim’s
blood were found on a bottle on the defendant’s premises; and one of the
defendant’s children recognized that the knife used in the murder belonged to
the defendant.  Id.

            Reed v. State also is unlike the
present case.  The accused in Reed was having an affair and told others
that he planned to “get rid of” his wife.  Reed, 744 S.W.2d at 126–27. 
He admitted he was at the crime scene during his wife’s murder, but medical
evidence contradicted his claim that he was unconscious.  Id. at 127.  There
was evidence that intruders could not have entered through the means that the
accused suggested.  Id. at 128.  There also were a number of
inconsistencies in the accused’s version of events.  See id. at 127–28.

            Cockrum, Edwards, and
Harris are similarly distinguishable.  The defendant in Cockrum was
seen with the accomplice immediately before and after the crime; listened
intently to a police scanner while staring down the road; had a gun similar to
that used in the offense; arranged to have someone drive him to another state
when he saw police at the accomplice’s ranch; checked into a hotel under an assumed
name; and had over $1,000 in his possession even though he was unemployed.  Cockrum,
758 S.W.2d at 581–82.  In addition to being with the accomplice near the scene
of the crime at around the time of the offense, the criminal defendant in Edwards
fled after the crime and accompanied the accomplice to a pawn shop where
the accomplice attempted to trade the murder victim’s gun.  Edwards, 427
S.W.2d at 633.  And in Harris, the criminal defendant and two other men
had the deceased’s gun about an hour after the murder, and when arrested the
next morning, the defendant had human blood on his shoes.  Harris, 738
S.W.2d at 218–19.  

            Unlike the precedential cases cited by
the State, there is no forensic evidence in this case, and no non-accomplice
evidence that appellant was at or near the scene of the crime around the time
of the offense, fled after the crime, or possessed stolen property.  No
corroborating evidence places appellant in the company of any accomplice
before, during, or for several hours after the crime.  No non-accomplice
evidence places appellant any nearer or farther from the crime scene than his
own home.  The perpetrators stole money, cigars, and cigarettes, but there is
no corroborating evidence that appellant possessed any such items.  His
clothing did not match descriptions of the clothing worn by those who committed
the crime, and police characterized his behavior as cooperative.  But, despite
the dearth of corroborating evidence, the prosecutor focused almost entirely on
Coleman and Roberts’s testimony during closing argument.  

            On this record, we believe rational jurors
would have found the State’s case “significantly less persuasive” had they been
properly instructed that they could not convict appellant based on Coleman and
Roberts’s testimony absent other evidence tending to connect appellant to the
robbery.  Because we conclude that appellant was egregiously harmed by the
trial court’s failure to instruct the jury on the need for corroborating
evidence, we sustain appellant’s sole issue on appeal.  

            We accordingly reverse appellant’s
conviction and remand the case for a new trial.  

 

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Christopher, and Jamison.

Publish
— Tex. R. App. P. 47.2(b).









[1] Appellant’s brother was
convicted by a jury.  See Freeman v. State, No. 14-09-00882-CR, 2011 WL
664762 (Tex. App.—Houston [14th Dist.] Feb. 24, 2011, pet. ref’d) (mem. op.,
not designated for publication).





[2] Although the State
asserts on appeal that the apartment “appeared to have been forcibly entered
and was possibly the scene of a criminal trespass or burglary of a habitation,”
no one testified that the window appeared to have been forced; that police
considered the appearance of the window suspicious; or that the apartment was
thought to be the possible scene of a criminal trespass or burglary.  To the
contrary, Detective Thomas Helgoth testified that police were looking for the
three suspects who ran into the woods.  He and two other officers went to the
apartment because they were told that an accomplice to the robbery lived there,
and through the window, officers saw three black men asleep inside.