FILED IN
COURT OF CRIMINAL APPEALS

JANUARY 16, 2015

ABEL ACOSTA, CLERK

PD-0044-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/9/2015 2:14:30 PM
Accepted 1/16/2015 2:44:36 PM
ABEL ACOSTA
CLERK

# PD-0044-15

_____

# IN THE
# COURT OF CRIMINAL APPEALS
# OF TEXAS

_____

## On Appeal from the 186th Judicial District Court
## San Antonio, Texas

\* \* \*

## 04-13-00346-CR
### 2011-CR-9420

\* \* \*

## JASSEN BARNES
### Petitioner
### v.

### State of Texas,
### Respondent

## PETITION FOR DISCRETIONARY REVIEW

**SUZANNE KRAMER**
325 S. Main Street
San Antonio, Texas 78204
Telephone No.: (210) 573-0201
Telefax No.: (210) 299-1139
COUNSEL FOR PETITIONER

## IDENTITY OF PARTIES AND COUNSEL

<u>Honorable Maria Teresa Herr - Presiding</u>

<u>Trial Counsel</u>
<u>Defense:</u>
Ina Minjares
2414 S. Hackberry
San Antonio, Texas 78205

Stephanie Boyd
115 E. Travis
San Antonio, Texas 78205

Veronica Legarreta
613 E Ashby Pl., Suite 2
San Antonio, Texas 78201

<u>State:</u>
Tanner Niedhardt
Tom Nisbet
101 West Nueva
San Antonio, Texas 78205

<u>Appellee Counsel</u>
Susan Reed
101 West Nueva
San Antonio, Texas 78205

<u>Petitioner Counsel</u>:
Suzanne Kramer
325 S. Main
San Antonio, Texas 78204

<u>Respondent Counsel</u>:

Nicholas Lahood
101 West Nueva
San Antonio, Texas 78205                    ii

**TABLE OF CONTENTS**            **PAGE**

| | |
|---|---|
| Identity of the Parties | ii |
| Index of Authorities | iv-v |
| Statement Regarding Oral Argument | vi |
| Statement of the Facts of the Case | vi-viii |
| Statement of the Procedural History | viii-ix |
| **Ground for Review Number One** | 1 |
| **Ground for Review Number Two** | 4-6 |
| Reasons for Review Number One | 1-4 |
| Reasons for Review Number Two | 6-13 |
| Prayer for Relief | 13 |
| Certificates of Service | 14 |
| Certificate of Compliance | 14 |
| Appendix | |
| *Barnes v. State*, 04-13-00345-CR (Tex.App.- - San Antonio) | 15-37 |

iii

# INDEX OF AUTHORITIES

| CASE NAME | PAGE |
|---|---|
| Addy v. State, 849 S.W. 2nd 245 (Tex.App. –Houston [1st Dist.] 1993) | 10 |
| Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2nd 215 (1963) | 6 |
| Burks v. State, 876 S.W. 2nd 877 (Tx.Cr.App.1994), cert. denied 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed. 2nd 791 (1995) | 4 |
| Cameron v. State, 415 S.W. 3rd 404 (Tex. App. –San Antonio, 2013 | 11 |
| Chambers v. State, 805 S.W. 2nd 459 (Tx.Cr.App. 1991) | 1 |
| Edwards v. State, 427 S.W. 2nd 629 (Tx.Cr.App.1968) | 4 |
| Fernandez v. State, 989 S.W. 2nd 781 (Tex.App. –San Antonio, 1998) | 2-4 |
| Flanagan v. State, 675 S.W. 2nd 734 (Tx.Cr.App.1984) (op. on reh'g) | 3 |
| Guillory v. State, 877 S.W. 2nd 71 (Tex. App.--Houston [1st Dist.] 1994 pet. ref'd) | 1 |
| Hardesty v. State, 656 S.W. 2nd 73 (Tx.Cr.App.1983) | 2 |
| Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2nd 560 (1979) | 1 |
| Johnson v. State, 673 S.W. 2nd 190 (Tx.Cr.App. 1984) | 1 |
| King v. State, 895 S.W. 2nd 701 (Tx.Cr.App.1995) | 2 |
| Lacour v. State, 8 S.W. 3rd 670 (Tx.Cr.App. 2000) | 1 |
| Lilly v. State, 365 S.W. 3rd 321 (Tx.Cr.App.2012) | 9-10 |

iv

Presley v. Georgia, 130 S.Ct. 721 (2010)                                          9-10

Reese v. State, 653 S.W. 2nd 550 (Tex.App.--Beaumont 1983, no pet.)               1

Steadman v. State, 360 S.W. 3rd 499(Tx.Cr.App.2012)                              9-10

United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392,49 L.Ed. 2nd 342              6
    & n. 17 (1976)

United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)                     6, 7

Villalon v. State, 791 S.W. 2nd 130 (Tx.Cr.App.1990)                             2

Waller v. Georgia, 467 U .S. 39 (1984)                                           *9*

## STATEMENT REGARDING ORAL ARGUMENT

Although the law that applies to Barnes' set of facts is well established, the Fourth Court's analysis of the facts and the law completely ignored established precedent from this Court as well as the other Texas appellate courts, glossing over any actual application of the law to the facts, blatantly ignoring evidence in the record. Therefore, Petitioner strongly requests this Court allow for the oral argument of this case, so as to not allow this erroneous opinion to stand.

**STATEMENT OF THE FACTS OF THE CASE**

The State informed the jury that Jassen Barnes made quick his escape with his "getaway" driver, Brittney Smiley, after shooting Justin Thomas. (R.R. v. 2, p.25) Brittney will become of primary importance to the State's case, and this appeal, as she was eventually granted full immunity in exchange for her testimony. The State's first witness was Lejoi Hayes. (R.R. v. 2, p. 30) She observed Justin speak with his cousin, Chastity Walker, and then he walked into the breeze way. (R.R. v. 2, p. 40) Lejoi saw Justin turn around like he heard someone call out his name. Lejoi was using her cell phone when she heard two gunshots. When she looked up, she saw two men standing together and one was Justin. Lejoi did not know Justin had been shot nor did she see the shooting or the shooter. (R.R. v. 2, p. 42) Lejoi identified Jassen Barnes only as the person she presumed was the shooter because she saw him earlier speaking to Justin. The State next called Officer Anthony Shane Pena who said the scene was chaotic with people running around everywhere. (R.R. v. 2, p. 73) Next to testify was Kesha Hall. (R.R. v. 2, p. 99), who testified that she saw Justin kind of shove "some other dude," but it did not look problematic. (R.R. v. 2, p.107) Kesha testified that she observed Brittney sitting on the stairs with a gun tied to her leg underneath her skirt.[1]

---

[1] Laketa Nation will later testify that she also observed Brittney with a weapon tied to her leg. (R.R. v. 2, p. 159)

(R.R. v. 2, p. 116) Keisha admitted that she had been drinking alcohol on that day. Kesha was provided with a photographic lineup and was unable to recognize Jassen Barnes. (R.R. v. 2, p.121) On re-direct testimony, the State asked Kesha if she was not identifying the "shooter" in court because she was hesitant. Kesha insisted she was not. Brittney Smiley was eventually granted full immunity in exchange for her testimony.[2] (R.R. v. 3, p. 81) Brittney testified that her weapon was a .22 and Jassen's weapon was more like a "cop gun." No weapons were found.[3] Brittney saw Jassen start talking to his "homeboys" and she started to talking with her "homegirl Melkay." (R.R. v.3, p. 124) A few minutes later, we heard gunshots and "everybody got up and ran for cover." (R.R. v. 3, p. 125) When Brittney ran into Jassen, he said "they're shooting out there. Let's go." Brittney said they got in the car and drove off. Brittney said that she was so high at the time of the statement, she did not remember what she said to the police officer. After reading her statement, Brittney said that it did not help refresh her memory. (R.R. v. 3, p. 129; SX 48) In her videotaped statement, Brittney said that Jassen told her he shot Justin. On cross-examination, Brittney admitted that at the time, she was addicted to embalming fluid and that it makes her brain "be not there." The

vii

---

2 In the charge, Brittney Smiley was identified as an accomplice witness as a matter of law.

3 .22 caliber bullets were located in Brittney's car, however, it was only her testimony that attributed those bullets to her weapon. (R.R. v.3, p. 20)

State called Chastity Walker. (R.R. v. 3, p.150) Chastity only identified Jassen as speaking with Justin prior to the shooting. (R.R. v. 3, p. 159) On cross-examination, Chastity admitted that she did not see any weapon and cannot say that she saw the person in the blue shirt pull a weapon. (R.R. v. 3, p. 166) Chastity could not identify Jassen Barnes in the photo lineup provided to her. (R.R. v. 3, p. 169) On July 15, 2013, the trial court allowed a motion for new trial hearing on affidavits only. The motion asserted that the State had engaged in prosecutorial misconduct when they failed to inform the defense of certain Brady material concerning the testimony of Brittney Smiley, the State's star witness. In addition, it was asserted that Jassen Barnes' stepfather, Eddie Taylor, had been denied access to the courtroom through a series of communications from his supervisor and an investigator from the District Attorney's Office. Finally, the amended motion for new trial asserted that the trial court is required, under the specific circumstances, to allow live testimony at hearings on motions for new trials.

## STATEMENT OF THE PROCEDURAL HISTORY

On November 1, 2011, the Grand Jury returned an indictment charging Murder against Jassen Barnes for an offense alleged to have occurred on July 22, 2011. (C.R. pgs. 25-26) Trial commenced on March 19, 2013. The jury convicted Jassen Barnes of Murder on March 21, 2013. (R.R. v. 4, p. 41) Sentencing by the Court took place

on May 1, 2013 where Jassen Barnes was sentenced to Life in the Texas Department of Criminal Justice, Institutional Division. On May 21, 2013, trial counsel filed Notice of Appeal, Motion to Withdraw and Motion for New Trial. (C.R. pgs. 189-190; 187-188; 184-186) The Trial Court did not appoint appellate counsel until May 28, 2013, almost 30 days from the date of sentencing. (C.R. p. 195) On May 31, 2013, current appellate counsel filed Notice of Appearance. (C.R. pgs. 196-197) Amended Motion for New Trial was also filed with attached affidavits and a request for a hearing. (C.R. pgs. 199-213) On July 15, 2013, appellate counsel filed a motion objection to the Trial Court conducting the motion for new trial hearing on affidavits only. (C.R. pgs. 245-247) The Trial Court overruled the appellant's objection and denied the Motion for New Trial. (C.R. p. 248). On December 10, 2014, the Fourth Court of Appeals issues its opinion affirming the conviction. (See attached)

## GROUND FOR REVIEW NUMBER ONE

The Petitioner asserts that the Opinion of the Fourth Court, affirming the conviction of murder, must be reversed and rendered for acquittal because the State's case completely failed to corroborate the accomplice witness testimony of their star witness, testifying under full immunity, in violation of Article 38.14 of the Texas Code of Criminal Procedure, 6th and 14th Amendments to the United States Constitution and Article 1, Section 10 of the Texas Constitution.

## REASONS FOR REVIEW

A legal sufficiency challenge is reviewed by considering the evidence in the light most favorable to the verdict, and whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lacour v. State*, 8 S.W. 3rd 670, 671 (Tx.Cr.App. 2000) citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2nd 560 (1979). The fact finder is entitled to evaluate the credibility of witnesses and is entitled to believe all, some or none of the evidence presented. *Chambers v. State*, 805 S.W. 2nd 459, 461 (Tx.Cr.App. 1991). While it is true that the jury is considered the ultimate trier of fact, and that it is allowed to make reasonable inferences, the jury cannot resort to mere speculation. See *Reese v. State*, 653 S.W. 2nd 550, 553 (Tex.App.--Beaumont 1983, *no pet.*); *Johnson v. State*, 673 S.W. 2nd 190, 196 (Tx.Cr.App. 1984); see also *Guillory v. State*, 877 S.W. 2nd 71, 74

1

(Tex. App.--Houston [1st Dist.] 1994, *pet. ref'd*).  In the case at bar, with the State's evidence relying solely on Brittney Smiley to prove that Jassen Barnes was the shooter of Justin Thomas, while all the other witnesses admitted to only hearing gunshots but not seeing a weapon nor the shooting, it became clear that the jury did not understand the court's charge as to their duty regarding their review of evidence pursuant to the accomplice witness instruction.  It is the duty of the reviewing court to consider all the evidence admitted at trial before deciding whether there was sufficient evidence to prove the element of the offense in dispute. *Villalon v. State*, 791 S.W. 2nd 130, 132 (Tx.Cr.App.1990).  The same standard of review applies to cases involving both direct and circumstantial evidence. *King v. State*, 895 S.W. 2nd 701, 703 (Tx.Cr.App.1995). The Petitioner contends that the evidence was legally insufficient to prove that he was guilty of murder, because of the failure of the State's witnesses to even remotely corroborate the testimony of Brittney Smiley. The Fourth Court's Opinion relied on the speculative testimony of the other "witnesses" to opine that the accomplice witness testimony had been corroborated.  (04-13-00346-CR, pgs. 5, 6, 7) A true review of the record of this trial belies this opinion.   Speculation and inference of guilt is not conclusive and the sufficiency of the evidence must be examined according to the applicable evidentiary standards of appellate review. *Hardesty v. State*, 656 S.W. 2nd 73, 77 (Tx.Cr.App.1983); *Fernandez v. State*, 989 S.W. 2nd 781 (Tex.App. –San

2

Antonio, 1998); *Flanagan v. State*, 675 S.W. 2nd 734, 746 (Tx.Cr.App.1984) (op. on reh'g). Under the facts represented in the Petitioner's record, all of the State's witnesses were speculating that the man in the blue shirt must be the shooter because he was seen in the presence of Justin Thomas before the shooting and he was seen driving away in a white car. Only the accomplice witness, Brittney Smiley, could cast guilt on Jassen Barnes as the shooter.

When faced with a record that fails to sufficiently corroborate the accomplice witness testimony, the law requires that the case be reversed and a judgment of acquittal be entered. *Fernandez,* 989 S.W. 2nd 781. In the case at bar, there can be no doubt that the State's witnesses were unable to observe the shooting and their testimony was based on speculation and nothing more. The circumstantial evidence of observing a man in a blue shirt talking to the complainant prior to the shooting serves only to show the "mere presence" of the Petitioner in the vicinity of the shooting. A conviction cannot stand if the corroborative evidence does no more than point the finger of suspicion toward an accused. 24 Tex.Jur. 2nd Evidence, Sec. 694, p. 326, note 18. Although an accomplice witness may state any number of facts that are corroborated by evidence of non-accomplice witnesses, such as placing the Petitioner with Brittney Smiley at the Dietrich Apartment complex on July 22, 2011, still, if the facts thus corroborated do not tend to sufficiently connect the accused with the crime,

3

then corroboration on that basis would not meet the requirements of article 38.14. *Id*.

If there are non-accomplice witnesses and their evidence fails to connect the accused

to the offense, other than mere presence, the evidence is insufficient to support the

conviction. *Munoz*, 853 S.W. 2nd 560; See also *Fernandez*, 989 S.W. 2nd 781 citing

*Edwards v. State*, 427 S.W. 2nd 629, 632 (Tx.Cr.App.1968), where that Court wrote:

The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient;  otherwise it is not.

See also *Burks v. State*, 876 S.W. 2ND 877, 887 (Tx.Cr.App.1994), cert. denied, 513

U.S. 1114, 115 S.Ct. 909, 130 L.Ed. 2nd 791 (1995).  Because no State witness

observed the shooting nor saw the Petitioner with a weapon, and no weapon was

found, there was no evidence to sufficiently corroborate the testimony of Brittney

Smiley, short of mere presence and  sheer speculation.

<u>GROUND FOR REVIEW NUMBER TWO</u>

The Fourth Court's Opinion should be reversed for failing to recognize the abuse of

discretion committed by the trial court for failing to grant the Petitioner a new trial, in that:

1) State failed to disclose Brady material; 2) Courtroom was closed to the Petitioner's

stepfather; 3) Denied defense the ability to call for testimony subpoenaed witnesses

who refused to supply an affidavit; in violation of the 6th and 14th Amendments to the

4

United States Constitution and Article 1, Sections 10 and 19 of the Texas Constitution.

The trial court allowed the hearing on the motion for new trial to be supported by affidavits only, attached to the Amended Motion for New Trial. (C.R. pgs. 199-213) Trial testimony lasted from March 19th to March 21st, 2013. Brittany Smiley was a witness for the State. Prior to testifying, Ms. Smiley was given full immunity in exchange for her testimony. (R.R. v. 3, p. 120) Ms. Smiley was on probation out of the 186th District Court. (2011-CR-6819) On April 4, 2013, the State filed a motion to enter an adjudication of guilt alleging that Ms. Smiley violated her conditions of probation in that "On or About March 23, 2013" she used various drugs. (MNT, DX 4) On April 8, 2013, Tanner Niedhart saw Amy Owen, an attorney, in the hallway of the courthouse. (MNT, p. 9) Mr. Niedhart informed Ms. Owen that he had filed a motion to enter an adjudication of guilt on Ms. Smiley because he believed she was "high" during her testimony at trial. (MNT, DX B - affidavit of Ms. Owen; C.R., pgs. 199-213) On April 5, 2013, when the motion to enter adjudication of guilt was filed, Ina Minjarez was still Mr. Barnes' attorney of record. Ms. Minjarez received no information from Mr. Niedhart as to his lack of confidence in Ms. Smiley's testimony and his belief that she was so incompetent to testify that, notwithstanding the Full Immunity agreement, he believed it warranted the filing of a motion to enter an adjudication of guilt revoking Ms. Smiley's deferred adjudication. (MNT, p. 10)

5

Sentencing of Mr. Barnes did not occur until May 1, 2013. Mr. Niedhart did not inform Ms. Minjarez of this vital piece of information that could have an effect on the confidence in the outcome of this trial. Ms. Owen was not Mr. Barnes' attorney so the communication of this fact did not constitute disclosure. Further, there would be no reason for Ms. Minjarez to do any further investigation of Ms. Smiley's status without disclosure from the State. Ms. Minjarez remained Mr. Barnes' attorney until May 28, 2013, when Larry Bloomquist was appointed as the appellate attorney, almost a full 30 days from the date of sentencing. (MNT, DX A - affidavit of Ms. Minjarez)

REASONS FOR REVIEW - *Failure to Disclose*

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2nd 215 (1963), the Supreme Court recognized the underlying principle is avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1197; *United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed. 2nd 342 & n. 17 (1976) In *Agurs*, 427 U.S. 97, 96 S.Ct. 2392, the Supreme Court was called upon to determine whether the prosecutor has a duty, in the absence of a specific request, to disclose exculpatory evidence to the defense, and if so, what standard of materiality gives rise to that duty. *Agurs*, 427 U.S. at 107, 96 S.Ct. at 2399. In *United States v. Bagley*, 473 U.S. 667,

105 S.Ct. 3375, 87 L.Ed. 2nd 481 (1985), the Supreme Court expanded the definition of favorable evidence to include both exculpatory evidence and **impeachment evidence**, because "[s]uch evidence is 'favorable to the accused' [citation omitted], so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *Bagley*, 473 U.S. at 676, 105 S.Ct. at 3380.

In the trial of Jassen Barnes, the State considered the testimony of Ms. Smiley to be of such importance that she was granted full immunity. Brittney Smiley was the only witness presented in the State's case that could identify Jassen Barnes as the shooter based on an admission. The non-accomplice witnesses failed to corroborate her testimony. Should Ms. Smiley's testimony be tainted, the State's entire case fails. If the State believed that Smiley's testimony was so tainted by their belief that she was under the influence of various narcotic drugs at the time of her testimony, to such an extent that a motion to enter an adjudication of guilt was filed based on this belief, it became the duty of the prosecutor to inform trial counsel of this information. Failure to do so undermines the confidence in the outcome of the trial and requires the granting a new trial.

The Fourth Court's opinion glossed over this point of error, denying all appellate review. Relying solely upon Tanner Niedhardt's affidavit, without considering or even mentioning the affidavit of Amy Owen, (04-13-00346-CR, pg. 17), which completely

7

conflicted with Niedhardt's, the Fourth Court decided that Mr. Niedhardt's affidavit alone, never was sufficient to refute the allegations contained within the amended Motion for New Trial. (C.R.pgs, 199-213) Because the two affidavits completely conflicted, the Petitioner was entitled to have live testimony and cross examination on this issue.

*Closure of the Courtroom*:    On May 27, 2013, counsel received a phone from Mr. Eddie Taylor, referencing information he possessed pursuant to the trial of Jassen Barnes, his stepson. With permission of Ina Minjarez, attorney of record, and the Petitioner, counsel began to investigate the information received from Mr. Taylor. Counsel was informed that, during the trial of Mr. Barnes, Eddie Taylor had been prevented from entering the courtroom.  Counsel began asking those who would have personal knowledge of such an event and could not find specific information that there was an official Judicial Order to this effect.  Counsel did inquire of Mr. Niedhart who informed counsel that Mr. Taylor, a maintenance man for Bexar County, had been located in the holdover cells changing light bulbs during the trial.  Mr. Niedhart informed counsel that he called Mr. Ben Ramirez, Mr. Taylor's supervisor, and requested that Mr. Taylor be instructed not to enter those locations during the trial. (MNT, p.11)  Counsel placed a call to Mr. Ramirez who informed her that he did not receive a call from Mr. Niedhart but he did receive a phone call from Sergeant Castillo

who informed him that Mr. Taylor was to be instructed not to enter the courtroom. Further, counsel spoke with Mike Beers, an investigator with the District Attorney's office, who informed counsel that he did tell Mr. Taylor that it would be a good idea if he just stayed out of the courtroom. Counsel was not able to obtain an affidavit from Mr. Beers although he was under subpoena for the hearing on the Motion for New Trial. In arguments, counsel put forth Mr. Beers' statements to Mr. Taylor. Mr. Taylor informed counsel that he believed that should he enter the courtroom at all, his employment would be terminated. (MNT, DX C - affidavit from Mr. Taylor)

In a criminal prosecution, the defendant has a right to a public trial. *See* U.S. Const. amends. VI, XIV; *Presley v. Georgia,* 130 S.Ct. 721, 723 (2010) (per curiam) (reiterating that the Sixth Amendment right to a public trial applies to the states via the Due Process Clause of the Fourteenth Amendment); *Steadman v. State,* 360 S.W. 3rd 499, 504 (Tx.Cr.App.2012). To close a courtroom, an overriding interest must be advanced to show that the closure is necessary and must be no broader than that needed to protect that interest, Further, the court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *See Waller v. Georgia,* 467 U .S. 39, 48 (1984); *accord Lilly v. State,* 365 S.W. 3rd 321, 328–29 (Tx.Cr.App.2012). In considering reasonable alternatives, "trial courts are required to consider alternatives to closure **even when they are not offered by the**

**parties**." *Presley,* 130 S.Ct. at 724; *accord Lilly,* 365 S.W. 3rd 329; *Steadman,* 360 S.W. 3rd 509. (emphasis added) A closure is not justified if there are reasonable alternatives to closure that the trial court cannot "sensibly reject." *See Steadman,* 360 S.W. 3rd 509; *see also Presley,* 130 S.Ct. at 724–25; *Lilly,* 365 S.W. 3rd 333.

*State Action Versus Judicial Order* - In *Addy v. State*, 849 S.W. 2nd 245 (Tex.App.–Houston [1st Dist.] 1993), it was held that the defendant was entitled to a new trial based on the actions of the prosecutor. In that case, the prosecutor claimed that certain people were subject to the rule, preventing their entrance to the courtroom. It was later determined that these people were not potential witnesses and the closure of the courtroom deprived the defendant of his right to a public trial and required reversal. *Addy* is being relied upon for the proposition that appellate courts are willing to reverse a case based on the closure of a courtroom that stemmed from the actions of someone in authority other than the Judge. In the case at bar, it was argued by counsel at the motion for new trial hearing that at the very least, a prosecutor and an investigator from the District Attorney's office were involved in keeping Mr. Taylor from the courtroom. (MNT, pgs. 9-12) Mr. Taylor believed that the admonishment he received from Mike Beers was of such a nature that should he enter the courtroom, his employment would be terminated. Therefore, although the prosecutor might not have specifically intended the full result, it was certainly within the realm of reasonable probability that this

10

would be the result. Certainly, the District Attorney investigator knew the result of his admonishment to Mr. Taylor would be that he would not be in the courtroom at the trial of his stepson. It has been deemed that when a complete closure of a courtroom occurs, where no specific necessity for said closure can be articulated, then the error is fundamental and reversal is required. See *Cameron v. State*, 415 S.W. 3rd 404 (Tex. App. –San Antonio, 2013, pet' denied, State rehearing filed, 11-7-14, PD-1427-13) *Cameron* is similar to the facts in this case in that the trial court was not made aware of the issue during trial although *Cameron* deals with exclusion from voir dire and the case at bar deals with exclusion during testimony.

*Denial of Live Testimony*: Counsel for Petitioner did not come on the case until the day before the final day of filing an Amended Motion for New Trial. Although phone calls were placed to witnesses, many of the witnesses failed to return the phone calls until well after the filing of the amended motion for new trial. Several witnesses were unwilling to provide an affidavit. These witnesses were subpoenaed for the hearing on the motion for new trial. Prior to the hearing on the motion for new trial, the trial court indicated that she would only allow arguments on filed affidavits. Defense filed an objection with an accompanying memorandum of law to the trial court's limitation of testimony, (C.R. pgs.245-247), and informed the Court that there were certain witnesses who would not provide an affidavit, however these witnesses were

11

subpoenaed. (MNT, pgs. 7,8)

The Fourth Court's opinion indicated that because the record contained no evidence of who the other subpoenaed witnesses were who would not be testifying, that the record was not adequately supplemented. (04-13-00346-CR, pg. 19) Justice Marion's opinion failed to appreciate the many documents filed by the Petitioner's attorney, prior to the hearing on the motion for new trial, fully delineating all the witnesses who had not been willing to provide an affidavit but who were subpoenaed before the motion for new trial hearing. (C.R., pgs. 245-247) In addition, the record indicates that at the argument on the Motion for New Trial, counsel for Petitioner discussed the conversation held with District Attorney Investigator as to his friendly admonishment to Mr. Taylor to stay away from the courtroom. (MNT)

An appellant has a right to hearing on a motion for new trial when the motion raises matters that are not determinable from the record. *Vera v. State,* 868 S.W. 2nd 433, 435 (Tex.App.--San Antonio 1994, no pet.). Eddie Taylor provided an affidavit wherein the issue of the closure of the courtroom was presented. His affidavit conflicted with Niedhardt's affidavit. Further, Amy Owen's affidavit conflicted with Niedhardt's. Not only did the trial court make a determination of the truthfulness and veracity of the different affidavits with no confrontation, but the Fourth Court did as well. There were several witnesses who would not supply affidavits but who were

12

subpoenaed to the hearing on the Motion for New Trial. The live testimony of these witnesses was constitutionally required to help the Petitioner fairly pursue the issues on appeal. One of the purposes of a hearing on a motion for new trial is to properly preserve issues for appellate review. To limit the testimony effectively prevented the Petitioner from preserving issues for the appeal and violated his constitutional rights to due process pursuant to the 6th and 14th Amendments to the United States Constitution and Article 1, Sections 10 and 19 of the Texas Constitution.

Therefore, the Petitioner requests that this Honorable Court provide appellate review on the points asserted in the original direct appeal dealing with the denial of the motion for new trial based on a Brady violations, denial of live testimony at the hearing on the motion for new trial, and the closure of the courtroom to Eddie Taylor at the trial. The opinion of the Fourth Court is of little import for determining the merits of the points asserted in the original appeal as the Opinion reflects a true lack of knowledge of the events as they transpired with reference to the motion for new trial.

PRAYER FOR RELIEF

The Petitioner respectfully prays that this Court actually consider granting review of this case. After review of all the facts, the Petitioner prays that this Court reverse and render the opinion of the 4th Court, and grant any and all other relief.

13

Respectfully submitted,


/S_____
Suzanne Kramer
325 S. Main
San Antonio, Texas 78204
210-573-0201

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Petitioner was hand-delivered to the Office of the District Attorney, Paul Elizondo Tower, on January 12, 2015. Further, I hereby certify that an original was electronically filed on January 9, 2015, with ten hardcopy briefs being mailed to the Court of Criminal Appeals, Supreme Court Building, P.O. Box 12308, Austin, TX 78711, on January 9, 2015.

/S_____
Suzanne Kramer

## CERTIFICATE OF SERVICE

I, Suzanne Kramer, hereby certify that a copy of the foregoing Petition for Discretionary Review was mailed to the State's Attorney, Box 12405, Capitol Station, Austin, Texas, 78711, on January 12, 2015.

/S_____
Suzanne Kramer

## CERTIFICATE OF COMPLIANCE

I, Suzanne Kramer, do hereby certify that the total word count of the foregoing PDR, exclusive of the Table of Contents, Index of Authorities, Procedural Statement of the Case, and the attached Opinion, is 4102.

/S_____
Suzanne Kramer

# APPENDIX

MEMORANDUM OPINION

No. 04-13-00346-CR

Jassen BARNES,

Appellant

v.

The

The STATE of Texas,

Appellee

From the 186th Judicial District Court, Bexar County, Texas

Trial Court No. 2011CR9420

Honorable Maria Teresa Herr, Judge Presiding

Opinion by: Sandee Bryan Marion, Justice

Sitting: Sandee Bryan Marion, Justice

Marialyn Barnard, Justice

15

Luz Elena D. Chapa, Justice

Delivered and Filed: December 10, 2014

AFFIRMED

A jury found appellant, Jassen Barnes, guilty of murder and sentenced him to life imprisonment. In five issues on appeal, appellant asserts (1) the evidence is insufficient to corroborate the accomplice witness testimony and sustain his conviction, (2) the trial court erred by admitting prejudicial evidence, (3) the State improperly commented on appellant's failure to testify, (4) the trial court erred by denying his motion for new trial, and (5) his spouse's testimony should have been excluded. We affirm.04-13-00346-CR

BACKGROUND

On July 22, 2011, Justin Thomas and his girlfriend went to the Dietrich Road Apartments where Thomas lived with his mother. The couple waited in their vehicle for Thomas's cousin to arrive. Upon his cousin's arrival, Thomas exited the vehicle while his girlfriend waited for Thomas to return. Thomas greeted his cousin and the two conversed briefly. A short time later, Thomas was seen in a breezeway speaking with a man later identified as appellant. Witnesses then heard gunshots and saw Thomas running out of the breezeway towards his mother's apartment. Thomas was heard yelling, "Call 9-1-1. He shot me." Thomas collapsed a short distance from where he was shot and died in his mother's arms shortly thereafter. Witnesses reported seeing appellant running from the location where Thomas was shot and driving off in a white Kia with damage on the rear bumper. Brittney Smiley was later identified as the vehicle's owner. Appellant was identified as a suspect, but the police were initially unable to arrest him because he left town. He was arrested several weeks later after the police learned of his return.

16

At trial, the evidence included testimony from a number of witnesses, Smiley's accomplice testimony, and forensic evidence. The first witness to testify was Thomas's girlfriend, Lejoi Haynes. Haynes testified she was waiting in her car for Thomas to return when Thomas was shot. Haynes said that immediately prior to hearing gunshots, she saw Thomas speaking with appellant, who was wearing a blue shirt and had hair she described as a "short afro." Haynes also testified she did not actually see the shooting occur or a gun in appellant's hands; however, she was able to get a good look at appellant because he stood there a few seconds after the shooting before running away. She confirmed appellant was the only other person in the immediate vicinity where the shooting took place and identified appellant as the shooter in a police lineup as well as in court. Kesha Hall testified she was at the Dietrich Road Apartments prior to and during the shooting. Hall stated she saw Smiley sitting with her cousin, Laketa Nation, on the steps of the

- 2 -04-13-00346-CR

apartment complex before the shooting occurred. Hall testified Smiley was wearing a dress that day and she was able to see a gun strapped to Smiley's leg. She also stated she saw appellant two or three times earlier that day, and described him as having dark skin with a "medium-sized afro," approximately two inches in length. Hall identified appellant as the person who shot and killed Thomas, although she acknowledged appellant looked different in court because he no longer had hair. After the shooting, Hall saw appellant flee the scene in a white car with damage on the rear bumper, and she identified Smiley as the vehicle's owner.

Laketa Nation testified next. Nation testified she lived at the Dietrich Road Apartments and was sitting on the steps of the apartment complex when she heard gunshots. Nation identified appellant as Smiley's boyfriend. She confirmed appellant was wearing a blue shirt the day of the

17

shooting and described his hair as "a little afro thing." Hall testified appellant looked different at trial because he no longer had hair, but confirmed that she still recognized appellant as the person wearing the blue shirt the day of the shooting. She also confirmed Smiley had a gun the day of the shooting, and stated that she did not actually see the shooting occur. Shortly after the shooting, she saw a white car drive away from the apartments.

The final non-accomplice witness to testify was Thomas's cousin, Chastity Walker. Walker testified she arrived at the Dietrich Road Apartments and was greeted by Thomas in the parking lot. After a brief conversation, she walked upstairs and left her belongings in her aunt's apartment. She then walked outside and stood on the balcony where she heard Thomas speaking with appellant. Her description of appellant matched the description given by the other witnesses—dark skin, blue shirt with a small afro. A few seconds later she heard gunshots, then heard Thomas yell, "Call 9-1-1. He shot me." Walker testified she did not see a gun nor the actual shooting take place. However, she identified appellant as the person who shot Thomas.

- 3 -04-13-00346-CR

After receiving immunity from prosecution, the jury also heard testimony from Brittney Smiley. Smiley testified she and appellant were at the Dietrich Road Apartments on the day of the shooting and confirmed they were both carrying guns. Smiley testified she was carrying a .22 caliber gun while appellant was carrying a gun she described as similar to one that a police officer carries. When they arrived, Smiley said she ran into her friend, Laketa Nation, and "smoked a blunt with her" on the apartment complex steps.[1]

Smiley testified she was sitting on the stairs with Nation when she heard gunshots and ran off. While running, Smiley ran into Thomas, who asked

her for help. Smiley testified she ran away without helping Thomas and felt bad for doing so. When she met up with appellant, she was in shock because she had just ran into someone who had been shot. When Smiley mentioned she saw Thomas, appellant asked her whether Thomas had died. Smiley told appellant she did not know because she did not stay long enough to find out. At that point, Smiley testified appellant told her he was the person who shot Thomas.

In addition to the witnesses' testimony, the State also introduced forensic and physical evidence. Crime scene investigators who processed Smiley's car found two .22 caliber bullets, and were also able to match appellant's fingerprints with fingerprints located on Smiley's car. The medical examiner testified Thomas's death was caused by a gunshot wound to the chest. Additionally, investigators recovered a .40 caliber shell cashing and bullet fragments near the area where Thomas was shot. Ballistic analysis on the shell casing and bullet fragments revealed the bullet that killed Thomas was fired from either a Glock or Smith & Wesson .40 caliber handgun— similar to the type of gun San Antonio police officers carry. The analysis also established that the murder weapon would have been unable to fire a .22 caliber bullet.

1 A blunt is a hollowed out cigar filled with marijuana instead of tobacco. See Tasby v. State, No. 05-99-02108-CR, 2000 WL 1598930, at *2 (Tex. App.—Dallas Oct. 27, 2000, no pet.).

- 4 -

04-13-00346-CR

CORROBOTATION OF ACCOMPLICE TESTIMONY

In his first issue, appellant challenges the sufficiency of the evidence to corroborate Smiley's accomplice witness testimony and argues the State relied solely on Smiley's testimony

to prove he committed the offense. Therefore, he asserts the evidence was insufficient to support the jury's guilty verdict. We first address corroboration of the accomplice testimony.

1. Standard of Review

To determine whether there is sufficient evidence to corroborate an accomplice's testimony, we exclude all accomplice witness testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused in some way to the commission of the offense alleged in the indictment. Castillo v. State, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007); Johnson v. State, 354 S.W.3d 491, 495 (Tex. App.—San Antonio 2011, pet. ref'd). The non-accomplice evidence may be direct or circumstantial, and must simply link the accused in some way to the commission of the crime, such that rational jurors could conclude this evidence sufficiently tended to connect appellant to the offense. Smith v. State, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). The "tends-to-connect" standard does not present a high threshold. Cantelon v. State, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.). Even insignificant circumstances may satisfy this standard. Id. No precise rule can be formulated regarding the amount of evidence that is required to corroborate the testimony of an accomplice witness; each case must be judged on its own facts. Gill v. State, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). We view the evidence in the light most favorable to the jury's verdict when reviewing corroboration under the accomplice witness rule. Id.

2. Analysis

Excluding Smiley's testimony, the evidence at trial included testimony from the medical examiner, who testified Thomas's death was the result of a gunshot wound to the chest. Three

- 5 -04-13-00346-CR

witnesses—Haynes, Hall, and Walker—identified appellant as the person who shot Thomas. Nation also placed appellant at the Dietrich Road Apartments at the time the murder occurred, and her description of appellant matched the other witnesses' description of the shooter. Several witnesses also reported the shooter fled the scene in Smiley's car and appellant's fingerprints matched those found on Smiley's car.

Viewed in the light most favorable to the jury's verdict, we conclude the evidence sufficiently tends-to-connect appellant to the charged offense. Accordingly, Smiley's testimony was sufficiently corroborated by other evidence tending to connect appellant to Thomas's murder.

LEGAL SUFFICIENCY

1. Standard of Review

When reviewing the legal sufficiency of the evidence to support a criminal conviction, we review the evidence in the light most favorable to the verdict to determine whether a rational juror could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under this standard, we are required to defer to the jury's determination of the credibility of witnesses "and the weight to be given their testimony." Brooks, 323 S.W.3d at 899. An eyewitness's testimony alone, can be legally sufficient to support a guilty verdict. Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); Castilla v. State, 374 S.W.3d 537, 539 (Tex. App.—San Antonio 2012, pet. ref'd). Circumstantial evidence is as probative as direct evidence, and alone, may be sufficient to establish guilt. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We do not ask whether we believe the evidence at trial established guilt beyond a reasonable doubt, instead, we consider only whether the jury reached a rational decision. Brooks,

323 S.W.3d at 899.

2. Analysis

Appellant asserts the State relied solely on Smiley's uncorroborated testimony to support his conviction. Therefore, because her testimony was uncorroborated, he contends the evidence is legally insufficient to support his conviction. However, having concluded there is sufficient nonaccomplice evidence corroborating Smiley's testimony, we will include her testimony in our evaluation of the legal sufficiency of all the evidence to support appellant's conviction. A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (West 2011).

The evidence in this case includes testimony from the eyewitnesses who identified appellant as the individual who shot Thomas. This evidence alone is legally sufficient to support the verdict. See Castilla, 374 S.W.3d 539. However, in addition to this evidence, Smiley testified appellant admitted he was the person who shot Thomas. Smiley also described the gun appellant had with him on the day of the shooting as similar to one that a police officer carries, and the forensic evidence established that the gun used in the shooting is consistent with the type of weapon carried by the San Antonio Police Department. Viewing the evidence in the light most favorable to the verdict, we conclude the a jury could have found beyond a reasonable doubt that

appellant intentionally or knowingly caused the death of Thomas, or intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death of Thomas.

PREJUDICIAL EVIDENCE

In his second issue, appellant contends the trial court abused its discretion when it admitted photographs of two .22 caliber bullets found in Smiley's vehicle over his objection that the

- 7 -04-13-00346-CR

evidence was unduly prejudicial under Texas Rule of Evidence 403. The State responds that the bullets were admissible to rebut the defense's theory that Smiley was the shooter.

Rule 403 allows for the exclusion of evidence when the probative value of evidence is substantially outweighed by the danger of unfair prejudice. See TEX. R. EVID. 403; State v. Mechler, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A Rule 403 analysis involves a balance of: "(1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted." Gigliobianco v. State, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); Subirias v. State, 278 S.W.3d 406, 408 (Tex. App.—San Antonio 2008, pet. ref'd). We review a trial court's ruling on a Rule 403 objection for an abuse of discretion. Pawlak v. State, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will

affirm its decision. Id.

A. Probative Value

Under the first factor, we examine "how compellingly the evidence serves to make a fact of consequence more or less probable." Mechler, 153 S.W.3d at 440. In this case, appellant's defensive theory was that he was not the shooter. Appellant argued that because no witnesses actually saw the shooting take place nor saw him with a gun, Thomas could have been shot by another person with a gun that day, such as Smiley. To rebut that argument, the State introduced pictures of the two .22 caliber bullets found in Smiley's car, Smiley's testimony that her gun was a .22 caliber, and forensic evidence to establish that a .22 caliber gun could not have fired a .40

- 8 -04-13-00346-CR

caliber bullet and could not have been the murder weapon. Thus, because the photographs of the .22 caliber bullets were introduced to rebut a defensive theory, the trial court could have reasonably concluded that the State's need for the evidence weighed in favor of admissibility.

B. Need for the Evidence

Under the second factor, a proponent's need for a particular piece of evidence is reduced when the proponent "has other compelling or undisputed evidence to establish the proposition or fact." Gigliobianco, 210 S.W.3d at 641. Here, the State introduced several witnesses who identified appellant as the person who shot Thomas. Although these witnesses identified appellant as the shooter, each witness acknowledged that they did not actually see the shooting occur nor did they see appellant with a gun. Smiley was the only person that day seen with a gun. Therefore, the trial court could have reasonably concluded that this factor weighed in favor of admissibility.

C. Potential to Impress the Jury

24

This factor asks whether the evidence has the potential to impress the jury in an irrational way or suggest a decision on an improper basis. Id. Rule 403 does not exclude all prejudicial evidence, only evidence that is unfairly prejudicial. Mechler, 153 S.W.3d at 440. All evidence introduced against a defendant that is material to an issue in the case and tends to prove guilt is prejudicial, but it is not necessarily unfairly prejudicial under Rule 403. Manning v. State, 114 S.W.3d 922, 927–28 (Tex. Crim. App. 2003). Evidence is unfairly prejudicial when it has a "tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." Mechler, 153 S.W.3d at 440. Here, appellant argues "[t]he only purpose for the admission of the bullets was to enflame the minds of the jury against both [Smiley] and [appellant], allowing [the jury] to speculate that [Smiley and appellant] must both be gun toting criminals deserving no justice." We disagree. The evidence regarding the .22 caliber bullets related directly to appellant's defensive theory. Therefore, the photographs of the bullets did not have a tendency to tempt the

- 9 -04-13-00346-CR

jury into finding guilt on grounds apart from proof of the offense charged. Thus, the trial court could have reasonably concluded this factor weighed in favor of admissibility.

D. Confusion of Issues & Undue Delay

The fourth factor refers to a tendency to confuse or distract the jury from the main issues in the case. Gigliobianco, 210 S.W.3d at 641. "Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues." Casey v. State, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). "'Undue delay' and 'needless presentation of cumulative evidence' concern the efficiency of the trial proceeding rather than the threat of an inaccurate decision." Id. Here, appellant was charged with murder. The

25

photographs of the bullets were directly related to appellant's defensive theory, and, in combination with other evidence, were introduced in order to rebut appellant's argument that another person, such as Smiley, was the shooter. The photographs were introduced during the testimony of one of the investigators and did not consume an inordinate amount of time. Nor was there a concern with the efficiency of the trial or the photographs being needlessly cumulative. Thus, we conclude the trial court could have reasonably concluded that these factors weighed in favor of admissibility.

E. Misleading the Jury

"'Misleading the jury,' refers to a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds." Casey, 215 S.W.3d at 880. "For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." Id. Here, the investigator testified that identifying the caliber of the bullets was accomplished by reading it from the shell casing. Therefore, there was little risk of the jury being misled or assigning undue weight to the presentation of the bullets. Thus, this factor should also be considered as weighing in favor of admissibility.

- 10 -04-13-00346-CR

F. Conclusion

Considering all of the factors in the analysis, the trial court could have reasonably concluded that the probative value of the photographs of the .22 caliber bullets was not substantially outweighed by the danger of unfair prejudice. Accordingly, we conclude the trial court did not abuse its discretion in allowing them into evidence.

COMMENT ON APPELLANT'S REFUSAL TO TESTIFY

In his third issue, appellant complains the State improperly commented on his refusal to testify. During the State's opening remarks, the prosecutor laid out the State's version of how it believed Thomas was killed. The prosecutor then told the jury:

At the end, what you're going to find out from these witnesses, these witnesses that he didn't count on, that this defendant committed murder. We're going to ask you to find him guilty of it. You're going to find him guilty based on the evidence.

Now, the defense will have the opportunity to tell you how it—whatever defense it's going to be. What I want you to keep in mind as you're listening to the evidence is whether what they're telling you is actually in evidence.

The defense then objected on the grounds the statement was argumentative, which the trial court sustained.

To preserve a complaint for appellate review, the complaining party must have made "a timely request, objection, or motion" to the trial court that specifically stated the party's complaint. TEX. R. APP. P. 33.1(a)(1); Garza v. State, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004). Additionally, the complaint on appeal "must comport with the objection made at trial." Yazdchi v. State, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). Here, the objection made at trial was that the prosecutor's statement was argumentative, not that the statement was a comment on appellant's refusal to testify. Accordingly, because appellant's complaint on appeal does not comport with the complaint made at trial, we conclude appellant has failed to preserve error.

- 11 -04-13-00346-CR

Additionally, assuming error had been preserved, we conclude the prosecutor's remark was

not a comment on appellant's refusal to testify. When addressing a complaint of an improper comment on a defendant's refusal to testify, we review the language from the standpoint of the jury. Goff v. State, 931 S.W.2d 537, 548 (Tex. Crim. App. 1996). The fact that the language might be construed as an implied or indirect allusion to a defendant's refusal to testify is not sufficient. Id. Where the statement does not refer to evidence that can come only from the defendant, it is not a comment on a defendant's refusal to testify. Id. Here, the prosecutor's remark did not refer to evidence that could have only come from appellant and was not a comment on appellant's refusal to testify.

SPOUSAL PRIVILEGE

In his fifth issue, appellant asserts Smiley was entitled to assert the marital privilege not to testify against him. Appellant and Smiley were never ceremonially married; therefore, appellant contends the evidence was sufficient to establish that a common law or informal marriage existed between them at the time of the events to which Smiley testified.

After she was granted immunity in exchange for her testimony, Smiley asserted she and appellant were informally married and argued that she had a privilege not to be called as a witness by the State. Outside the presence of the jury, Smiley's counsel attempted to establish the existence of an informal marriage. At the end of the hearing, the trial judge ruled Smiley failed to meet her burden of establishing the existence of an informal marriage based on the amount of evidence contrary to her assertion. Smiley was subsequently called to testify by the State.

1. Standard of Review

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court . . . ."

TEX. R. EVID. 104(a). "In reviewing the trial court's ruling [on the existence of an informal

- 12 -04-13-00346-CR

marriage,] as with other questions concerning the admissibility of evidence, we apply an abuse of discretion standard." Colburn v. State, 966 S.W.2d 511, 514 (Tex. Crim. App. 1998); see Tienda v. State, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). A trial court does not abuse its discretion unless its decision is outside the zone of reasonable disagreement. Colburn, 966 S.W.2d at 514. The existence of an informal marriage is a question of fact, and the party seeking to establish the existence of the marriage bears the burden of proving the validity of the marriage by a preponderance of the evidence. Alonso v. Alvarez, 409 S.W.3d 754, 757 (Tex. App.—San Antonio 2013, pet. denied); Weaver v. State, 855 S.W.2d 116, 120 (Tex. App.—Houston [14th Dist.] 1993, no pet.). Where, as here, the trial court's decision turns on the credibility and demeanor of a witness, we review its decision in a light most favorable to its ruling. Jasper v. State, 61 S.W.3d 413, 419 (Tex. Crim. App. 2001).

2. Analysis

"In a criminal case, the spouse of the accused has a privilege not to be called as a witness for the state." TEX. R. EVID. 504(b)(1). An informal marriage may be proven by showing that a declaration of marriage has been signed. Jasper, 61 S.W.3d at 419. If there is no declaration, there must be a showing of three elements: 1) the parties agreed to be married, (2) after the agreement they lived together in Texas as husband and wife, and (3) they represented to others that they were married. TEX. FAM. CODE ANN. § 2.401(a)(2) (West 2006); Alonso, 409 S.W.3d at

757.

29

Appellant was not called to testify at the hearing, and Smiley was the only witness to testify about the alleged informal marriage. No declaration of marriage was offered. Smiley testified that she considered herself married to appellant for three years prior to the day of the shooting. Smiley said that she and appellant held themselves out as married to their friends and family, and testified that she and appellant lived together prior to his arrest. Smiley also introduced letters she

- 13 -04-13-00346-CR

sent to appellant. In the letters, Smiley referred to herself as "Brittney Carter," and Smiley explained Carter is the last name of appellant's mother. Smiley also sent a letter to appellant's attorney. In that letter, Smiley refers to appellant as her husband, writing, "I understand you're my husband's attorney."

However, upon cross-examination by the State, Smiley gave contradictory testimony. During the hearing, Smiley testified she was living with appellant at a house on Castle Hunt Drive; however, she listed her home address at a house on Dysart Drive when she was interviewed by the police on July 22, 2012. Smiley stated the Dysart address was her mailing address, not her home address. The police statement also shows Smiley responded that she was not married when she was asked her marital status. When asked about the discrepancy, Smiley stated "that couldn't have been answered by me," and that she could not remember speaking to the police because she was high on Xanax and marijuana that day. The State then played a recorded portion of the interview. After hearing the recording, Smiley confirmed responding that she was not married when asked by the officer.

Appellant's jail visitation records were also introduced during the hearing. The records show that the mother of appellant's son identified herself as appellant's spouse when she visited.

The records also show Smiley identified herself as appellant's girlfriend when she visited. Smiley said the identifications were outdated and could not be updated once entered. A letter sent from appellant to a woman named Brittney Smith was also introduced during the hearing. In the letter, appellant asks Smith to be his wife. Smiley confirmed appellant was not writing to her and that she did not live at the address listed on the letter. Finally, the State introduced Smiley's Supplemental Nutrition Assistance Program (food stamps) application where Smiley listed herself as single.

- 14 -04-13-00346-CR

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude there was sufficient evidence to support the trial court's ruling. Although the evidence may have been sufficient to raise a fact question as to the existence of an informal marriage, we cannot say that the trial court abused its discretion.

Appellant further contends the trial court erred by failing to submit the issue of the existence of an informal marriage to the jury. However, "[t]he right to have the issue [of the existence of a common law marriage] presented to the jury may be waived if such an instruction is not requested." Aguilar v. State, 715 S.W.2d 645, 647 (Tex. Crim. App. 1986). Here, no jury question was requested. Therefore, we conclude appellant waived this complaint on appeal.

MOTION FOR NEW TRIAL

In his final issue, appellant asserts the trial court erred when it denied his motion for new trial. Appellant bases this argument on three grounds: (1) the State failed to disclose Brady material; (2) his right to a public trial was violated; and (3) he was denied the ability to present oral testimony.

We review a trial court's ruling on a motion for new trial under an abuse of discretion

standard. Colyer v. State, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). Under this standard, we

view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's

ruling if it is within the zone of reasonable disagreement. Webb v. State, 232 S.W.3d 109, 110

(Tex. Crim. App. 2007). We do not substitute our judgment for that of the trial court, but instead

consider whether the trial court's decision was arbitrary or unreasonable. Id.; Holden v. State, 201

S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial court abuses its discretion in denying a motion

for new trial when no reasonable view of the record could support its ruling. Colyer, 428 S.W.3d

at 122.

- 15 -04-13-00346-CR

"The trial court, as factfinder, is the sole judge of witness credibility at a hearing on a

motion for new trial with respect to both live testimony and affidavits." Okonkwo v. State, 398

S.W.3d 689, 694 (Tex. Crim. App. 2013). If there is conflicting evidence on an issue of fact, the

trial judge determines the issue and there is no abuse of discretion in overruling the motion for

new trial. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

A. Brady Violation

The State has a duty to disclose evidence that is favorable to a defendant. See Brady v.

Maryland, 373 U.S. 83, 87 (1963); Harm v. State, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006).

This duty extends to impeachment evidence. See United States v. Bagley, 473 U.S. 667, 676

(1985). To establish a Brady violation claim, the defendant must show that (1) the State failed to

disclose evidence, regardless of the good faith of the prosecutor, (2) the withheld evidence is

favorable to the defendant, and (3) the withheld evidence is material, meaning there is a reasonable

probability that had the evidence been disclosed, the outcome of the trial would have been different. See Harm, 183 S.W.3d at 407. However, Brady is not a general discovery motion. Weatherford v. Bursey, 429 U.S. 545, 559 (1977). Nor is the State required to seek out exculpatory evidence independently on the defendant's behalf or furnish the defendant with exculpatory or mitigating evidence that is accessible from other sources. See Pena v. State, 353 S.W.3d 797, 811 (Tex. Crim. App. 2011); Harm, 183 S.W.3d at 407.

Appellant's Brady argument is based on a motion to revoke Smiley's probation and adjudicate guilt filed by the State on April 5, 2013. The motion states that on or about March 25, 2013, approximately three days after the conclusion of appellant's trial, Smiley violated condition number two of her probation by failing to submit to a drug test and using marijuana, cocaine, and "pills," by admission. Appellant construes this motion as the State withholding impeachment evidence that Smiley was under the influence of drugs at the time of her testimony during

- 16 -04-13-00346-CR

appellant's trial. However, during the hearing on appellant's motion for new trial, the State submitted an affidavit from Tanner Neidhardt, the prosecutor in appellant's trial. In his affidavit, Neidhardt stated the motion to revoke and adjudicate guilt was based on a phone call made by Smiley several days after the conclusion of appellant's trial. Neidhardt stated the District Attorney was monitoring Smiley's phone calls and overheard Smiley tell appellant, "I'm dirty as fuck . . . . I got pills in my system. I got lean in my system, cocaine in my system." The conversation was forwarded to Smiley's probation officer, who initiated the motion to revoke based on the content of that conversation.

Consequently, appellant has failed to demonstrate that the State possessed any

33

impeachment evidence at the time of Smiley's testimony, and thus, has failed to show the State withheld evidence favorable to appellant. Accordingly, viewing the evidence in the light most favorable to the trial court's ruling, we cannot conclude the trial court abused its discretion in denying appellant's motion for new trial on this ground.

B. Denial of a Public Trial

Under the Sixth Amendment to the United States Constitution, an accused has the right to a public trial in all criminal prosecutions. U.S. CONST. amend. VI; Lilly v. State, 365 S.W.3d 321, 328 (Tex. Crim. App. 2012). A public trial benefits the accused by serving as "an effective restraint on possible abuse of judicial power." In re Oliver, 333 U.S. 257, 270 (1948); Lilly, 365 S.W.3d at 328. However, the right to a public trial is not absolute and must give way to other competing interests or rights. Waller v. Georgia, 467 U.S. 39, 45 (1984); Lilly, 365 S.W.3d at 328. "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." Waller, 467 U.S. at 48.

"[T]he first step for a reviewing court when analyzing whether a defendant's right to a public trial was violated is to determine if the trial was, in fact, closed to the public." Lilly, 365 S.W.3d 329. "When determining whether a defendant has proved that his trial was closed to the public, the focus is not on whether the defendant can show that someone was actually excluded." Id. at 331. "Rather, a reviewing court must look to the totality of the evidence and determine whether the trial court fulfilled its obligation 'to take every reasonable measure to accommodate

public attendance at criminal trials.'" Id. (quoting Presley v. Georgia, 558 U.S. 209, 215 (2010)). "Once it is determined that the defendant's trial was closed to the public, the reviewing court decides whether that closure was proper." Id.

Appellant contends his right to a public trial was violated because his stepfather, Eddie Taylor, was prevented from entering the courtroom. Taylor is a Bexar County employee who works in the maintenance department of the courthouse where appellant was tried. In his motion for new trial, appellant alleged Neidhardt saw Taylor in the holding area where appellant was being held before trial. Appellant further alleged Neidhardt called Taylor's supervisor, Ben Ramirez, and requested Ramirez instruct Taylor not to enter the holding area during trial. Additionally, the motion stated Ramirez denied receiving a call from Neidhardt, but further alleged that Ramirez received a call from another individual named Sergeant Castillo, who informed Ramirez that Taylor was to be instructed not to enter the courtroom.

Neidhardt addressed these allegations in his affidavit attached to the State's response to appellant's motion for new trial. Neidhardt confirmed Taylor was observed leaving the holding area; however, Neidhardt denied appellant's allegations that Taylor was prevented from attending appellant's courtroom proceedings. Neidhardt stated that he spoke to appellant's counsel and informed her the trial court did not have a hearing that Taylor was barred from attending. Neidhardt denied calling Ramirez, denied that he knew Ramirez, and denied requesting Taylor be

- 18 -04-13-00346-CR

instructed not to enter the courtroom. He also denied calling or asking any other person to call Castillo to instruct Taylor not enter the courtroom. Finally, Neidhardt denied there was ever a hearing in the trial court regarding Taylor, nor was there any other discussion with the trial judge

regarding Taylor.

Additionally, a review of the record shows the trial court did not take any affirmative action to exclude the public or specific individuals from attending the proceedings. Cf. Lilly, 365 S.W.3d at 332. Viewing the totality of the evidence, we conclude appellant has failed to demonstrate the trial was closed to the public, or that the trial court failed to fulfil its obligation to take every reasonable measure to accommodate public attendance. Accordingly, we cannot say that the trial court abused its discretion in denying appellant's motion for new trial on this ground.

C. Denial of Live Testimony

Appellant also argues the trial court erred by denying him the ability to present oral testimony in support of his motion for new trial. On appeal, appellant contends "[t]here were several witnesses who would not supply affidavits but who were subpoenaed to the hearing on the Motion for New Trial." However, he does not identify the witnesses or the substance of their testimony.

"It has long been held that a trial court may decide a motion for new trial based on sworn pleadings and affidavits admitted in evidence without hearing oral testimony." Holden, 201 S.W.3d at 763 (citing Rivera v. State, 89 S.W.3d 55, 58–59 n.9 (Tex. Crim. App. 2002)). Oral testimony is not required and a trial court may rule on a motion for new trial "based on sworn pleadings and affidavits without oral testimony." Id. Therefore, the trial court was entitled to resolve the issues raised in appellant's motion for new trial on the basis of the affidavits alone. Accordingly, we conclude the trial court did not abuse its discretion by ruling on the motion for new trial without hearing oral testimony.

- 19 -04-13-00346-CR

CONCLUSION

Based on the foregoing reasons, we affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Do not publish